USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: Mar 28, 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NAREEN ADUSUMELLI, et al.,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Plaintiffs,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:　08 Civ. 6932 (JMF)
　　　　　　-v-　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
DAVID STEINER, COMMISSIONER OF　　　　　　　　:
EDUCATION, et al.,　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Defendants.　　　　　　　　:
------------------------------------------------------------------X
ALANNA FARRELL,　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Plaintiff,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　-v-　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:　09 Civ. 4902 (JMF)
　　　　　　　　　　　　　　　　　　　　　　　:
NEW YORK STATE DEPARTMENT OF　　　　　　　　　:
EDUCATION, et al.,　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Defendants.　　　　　　　　:
------------------------------------------------------------------X
VISHNU AKULA, et al.,　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Plaintiffs,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　-v-　　　　　　　　　　　　　　　　:　10 Civ. 4549 (JMF)
　　　　　　　　　　　　　　　　　　　　　　　:
DAVID STEINER, et al.,　　　　　　　　　　　　:　OPINION AND
　　　　　　　　　　　　　　　　　　　　　　　:　　　ORDER
　　　　　　　　　　Defendants.　　　　　　　　:
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

　　　　Plaintiffs in these consolidated cases are pharmacists who successfully challenged New York State Education Law Section 6805(1)(6) on the ground that the statute's requirement that an applicant for a pharmacist's license in New York be either a United States citizen or an alien lawfully admitted for permanent residence in the United States

violated the Equal Protection and Supremacy Clauses of the United States Constitution. *See Dandamudi v. Tisch*, 686 F.3d 66, 69 (2d Cir. 2012). Plaintiffs now move for an award of attorney's fees pursuant to Title 42, United States Code, Section 1988 and Federal Rule of Civil Procedure 54(d)(2). For the reasons discussed below, Plaintiffs' motions are granted in part and denied in part.

## BACKGROUND

The first of these cases was filed on August 4, 2008; it was later consolidated with the other two cases, as all three challenged the constitutionality of Section 6805(1)(6). Early in the proceedings, the parties stipulated to stay the cases pending the outcome of *Kirk v. New York State Department of Education*, No. 08-CV-6016, (W.D.N.Y), a lawsuit challenging an analogous provision of the New York State Education Law on similar grounds, as all parties agreed that the outcome in *Kirk* would likely be dispositive of this lawsuit. (Docket Nos. 7, 15).[1] In *Kirk*, the district court awarded summary judgment to the plaintiff, who was represented by same firm representing Farrell in this case, Harter Secrest & Emery LLP ("Harter Secrest"). *See Kirk v. N. Y. State Dep't of Educ.*, 562 F. Supp. 2d 405, 407 (W.D.N.Y. 2008). While Defendants' appeal of that decision was pending, however, the plaintiff received his green card, thus mooting the case. (*See* Docket No. 15 (advising this Court of the dismissal of the *Kirk* appeal on mootness grounds)).

Upon dismissal of *Kirk*, the parties resumed active litigation in these cases. (Docket No. 15). On September 10, 2010, then District Judge Richard J. Holwell, to

---

[1] As these cases are consolidated, all relevant filings are available on the docket of the earliest filed case, *Adusumelli v. Steiner*, 08 Civ. 6932. Accordingly, all citations to docket entries in this opinion refer to the docket in that case, except for one instance where the reference to the *Kirk* docket is specifically noted.

whom these cases were previously assigned, granted summary judgment to the Plaintiffs, holding that Section 6805(1)(6) violated the Equal Protection and Supremacy Clauses of the United States Constitution. *See Adusumelli v. Steiner*, 740 F. Supp. 2d 582 (S.D.N.Y. 2010) (Holwell, J.). Defendants appealed that decision to the Second Circuit. (Docket No. 74). On July 10, 2012, the Second Circuit affirmed Judge Holwell's decision. *See Dandamudi*, 686 F.3d 66. Thereafter, Plaintiffs moved for attorney's fees pursuant to Title 42, United States Code, Section 1988 and Federal Rule of Civil Procedure 54(d)(2). (*See* Docket Nos. 87, 92).

## APPLICABLE LAW

Section 1988(b) provides that, in federal civil rights actions, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 1988(b). As the Second Circuit has explained, "the 'function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel.'" *Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir. 2001) (quoting *Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir. 1982)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (stating that fee awards "ensure effective access to the judicial process for persons with civil rights grievances" (internal quotation marks omitted)). Thus, although a district court has wide discretion in choosing whether to award or deny attorney's fees, "this discretion is narrowed by a presumption that successful civil rights litigants should ordinarily recover attorneys' fees unless special circumstances would render an award unjust." *Raishevich*, 247 F.3d at 344; *accord Hensley*, 461 U.S. at 429.

Courts in the Second Circuit use the familiar "lodestar" method of calculating reasonable attorney's fees — multiplying the number of hours reasonably expended by a reasonable hourly rate. *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (noting that "absent extraordinary circumstances, failing to calculate [the lodestar amount] as a starting point [for awarding attorney's fees] is legal error"). Although the Second Circuit and the Supreme Court have stated that an award calculated using this method is "presumptively reasonable," district courts "may adjust the lodestar when it 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Id.* at 166-67 (quoting *Perdue v. Kenny A. ex rel. Winn*, — U.S. —, 130 S. Ct. 1662, 1673 (2010)).

## FARRELL'S FEE REQUEST

Farrell requests $215,020.34 in attorney's fees and costs billed by her counsel, Harter Secrest. (*See* Catillaz Decl. (Docket No. 115) ("Catillaz Decl. II") ¶ 6). This figure represents the lodestar amount for Harter Secrest's work on all stages of this case, including the preparation of this motion, less a small reduction based on Harter Secrest's exercise of billing judgment. (*See* Farrell Mem. Law Supp. Mot. Att'y Fees (Docket No. 90) ("Farrell Mem. Law") 8-9; Catillaz Decl. (Docket No. 88) ("Catillaz Decl. I") ¶ 50; Catillaz Decl. II ¶¶ 4-5). Defendants challenge this fee request on four grounds: (1) that Harter Secrest's billing is excessive and duplicative of the work it performed on behalf of the plaintiff in *Kirk*; (2) that some of the legal research conducted by a senior associate (who later made partner) should have been conducted by a junior attorney billing at a lower rate; (3) that some of Harter Secrest's billing entries reflect "block billing," which limits the Defendants' and the Court's ability to evaluate the reasonableness of the fee

requests; and (4) that Harter Secrest should be awarded only 50% of their normal rate for travel time, rather than the full rate that Harter Secrest seeks. (Defs.' Mem. Law Opp'n to Farrell Mot. (Docket No. 107) ("Opp'n to Farrell") 2). Notably, Defendants do not challenge the reasonableness of Harter Secrest's billing rates. Nor do they argue that, aside from the fact that Harter Secrest previously worked on similar issues in *Kirk*, the firm spent an excessive amount of time litigating the complex legal issues decided in this case. The Court will address each of Defendants' arguments in turn.

### A. The *Kirk* Litigation

Defendants first contention is that Harter Secrest seeks, in effect, to double bill for work it conducted on the present litigation because it conducted substantially the same work, and was compensated for it, in the *Kirk* litigation. (Opp'n to Farrell 5-8). In fact, Defendants argue that this case was only necessary because of Harter Secrest's "avoidable" failure to substitute a new plaintiff into *Kirk* to avoid the dismissal as moot. (*Id.* at 8). This latter argument is plainly without merit, as Harter Secrest's obligation in *Kirk* was to represent the interests of its client and, having obtained a successful outcome for him, it was under no obligation to find another potential plaintiff to take his place. Similarly, to the extent that Defendants suggest that an award of attorney's fees should be reduced *any* time a plaintiff's counsel has litigated a substantially similar case, their argument goes too far. Defendants cite no legal authority for such a categorical proposition, and the Court is not aware of any. And a *per se* rule of that sort would disincentivize experienced attorneys from taking on civil rights litigation, which would be inefficient and contrary to the purpose of Section 1988(b).

5

Nevertheless, on the specific facts of this case, the Court agrees with Defendants that a reduction of Farrell's fee request is warranted in light of Harter Secrest's work on *Kirk*. The firm's summary judgment brief in this case is virtually identical to the brief it filed in the *Kirk* case. (*See* Coulston Decl. (Docket No. 108) ("Coulston Decl. I"), Exs. B and C). Indeed, aside from the elimination of two sections and the addition of a new fact section, there are only cosmetic changes to transitions between paragraphs, proper names, and statutory provisions; further, the only additional case law cited in the *Farrell* brief is *Kirk* itself. To be sure, there is nothing improper about Harter Secrest recycling its work from *Kirk* in this case, as the issues in the two cases were nearly identical. Further, the similarity between two briefs is not, in itself, a reason to reduce a fee award, as one would imagine that the use of prior work would be reflected in the fee request itself. (*Cf.* Farrell Reply Mem. 2-3 (Docket No. 109) (contending that there are "built-in efficiencies . . . already reflected in Plaintiff Farrell's fee request as a result of her counsel's experience with *Kirk*")). In other words, one would assume that, because Harter Secrest did not have to write a brief from scratch, it would have billed many fewer hours for preparation of the brief in this case.

Harter Secrest's problem is that this assumption is not borne out by its billing records. Looking only at the time spent preparing Kirk's and Farrell's motions for summary judgment (that is, not considering the time spent preparing opposition and reply briefs, as those differed more significantly between the cases), it appears that Harter Secrest billed almost twenty-five hours *more* for its work in this case than for its work in

*Kirk*.[2] And while the firm's work in *Kirk* did not save it from having to spend time in this case drafting, among other things, a new facts section, a Local Rule 56.1 statement of material facts, and a Local Rule 56.1 counterstatement to Defendants' statement of material facts, Margaret A. Catillaz billed over twenty-two hours of time on preparation of the "brief" alone (a total that does not even include any of the more than twenty hours that she block-billed for work on the brief *and* other summary judgment documents, hours she billed specifically for work on other summary judgment documents, or hours billed by an associate that may have been brief-related). (*See* Catillaz Decl. I Ex. B, at 14-17). In short, on the facts of this case, the Court finds that the amount of time Harter Secrest billed for preparation of the summary judgment brief, given its prior work in *Kirk*, was excessive and that a reduction in its fee request is warranted.

Nevertheless, the Court does not find that the reduction should be as large as the twenty percent that Defendants seek. (Opp'n to Farrell 8). In fact, any across-the-board percentage reduction would be inappropriate, as there is no allegation, let alone evidence, that Harter Secrest's work in this case beyond the summary judgment brief was duplicative of its work in *Kirk*. (Among other things, the fees in awarded in *Kirk* did not include any time spent on the merits appeal. (Farrell Reply Mem. 3).) Instead, the remedy should fit the circumstances. Accordingly, instead of reimbursing Farrell for the

---

[2] Specifically, for the period between January 5, 2010, when the first time entry for work on Farrell's summary judgment motion appears, and March 1, 2010, when the motion was filed, Harter Secrest attorneys and paralegals claim 68 hours of billed work on the motion. (*See* Catillaz Decl. I, Ex. B, at 14-17). By contrast, for the analogous period of time in the *Kirk* litigation, Harter Secrest sought fees for only 41.7 hours of work (including some time that was block-billed and therefore may have been spent on other work). *See* Decl. of Margaret A. Catillaz in Supp. App. by Pl. Simon E. Kirk for an Allowance of Att'ys' Fees, *Kirk v. N.Y. State Dep't of Educ.*, No. 08-CV-6016 (W.D.N.Y.) (Docket 08-CV-6016 No. 48).

7

more than twenty-two hours that Catillaz billed for preparation of the summary judgment brief in this case, the Court will award fees for only ten hours of that time — a reduction of 12.5 hours, or $5,062.50.

**B. Legal Research by Senior Attorneys**

Next, Defendants seek to reduce the fee request because Jeffrey A. Wadsworth, currently a Partner at Harter Secrest, conducted a significant amount of legal research. (Opp'n to Farrell 9-10). In support of their request, Defendants rely exclusively on *Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 301-02 (S.D.N.Y. 2001), in which the Court concluded that a senior partner with forty years of experience should have delegated some tasks to junior associates rather than drafting the complaint, drafting and responding to discovery requests, drafting statements of fact, and doing legal research all himself. This case is easily distinguished from *Shannon*, however, as Harter Secrest made significant use of junior associates and paralegals to perform more basic tasks on the case. Moreover, when Wadsworth himself conducted most of the research in this case, he was an associate, not a partner. (*See* Wadsworth Decl. (Docket No. 110) ¶ 6). Thus, the Court declines to reduce the fee request on this basis.

**C. Block Billing**

As a general matter, any attorney who seeks court-ordered compensation in this Circuit "must document the application with contemporaneous time records[,] . . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). In light of this requirement, Defendants seek a five percent reduction for entries that they identify as "block billed" (Opp'n to Farrell 10), a time-keeping practice

8

"that involves stating the total daily time spent on a case, rather than separating out the time into individual entries describing specific activities." *Aiello v. Town of Brookhaven*, No. 94-CV-2622 (FBW) (DW), 2005 WL 1397202, at *2 n.5 (E.D.N.Y. June 13, 2005) (internal quotation marks omitted). As Defendants note, courts in this Circuit have sometimes applied a percentage reduction to block-billed entries based on the "inherent difficulties the Court would encounter in attempting to parse out whether the number of hours spent on the work performed was reasonable" in light of the fact that "a single billing entry might mix tasks that are compensable with those that are not, or mix together tasks that are compensable at different rates." *Hnot v. Willis Grp. Holdings Ltd.*, No. 01 Civ. 6558 (GEL), 2008 WL 1166309, at *6 (S.D.N.Y. Apr. 7, 2008) (internal quotation marks omitted). At the same time, "block billing is not automatically disfavored by courts in this district." *Id.* Thus, courts have generally limited across-the-board reductions to situations "where there was evidence that the hours billed were independently unreasonable or that the block-billing was mixing together tasks that were not all compensable, or not all compensable at the same rate." *Id.* (collecting cases).

Here, Defendants assert that Harter Secrest has "engaged in substantial block billing, including many entries from Mr. Wadsworth." (Opp'n to Farrell 10). Despite this claim, Defendants identify only four examples of block-billing; fail to "identify a single block-billed entry that contains tasks that are themselves unreasonable or duplicative," *Hnot*, 2008 WL 1166309, at *6; and fail to include *any* block-billed entry in their table of objections to specific time entries. (*See* Opp'n to Farrell 10-12; Coulston Decl. I Ex. A). Nor is there any evidence of imprecise billing into quarter-, half-, or full-hour blocks; vagueness in the block-billed entries; or combined billing of activities

9

compensable at different rates (other than travel discussed below), any of which might call for heightened scrutiny of block-billing. *See, e.g.*, *Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd.*, No. 07 Civ. 7983 (DAB) (HBP), 2011 WL 8955840, at *8 (S.D.N.Y. Apr. 7, 2011) (imprecise billing into quarter-, half-, or full-hour blocks), *report and recommendation adopted,* No. 07 Civ. 7983 (DAB), 2012 WL 3871394 (S.D.N.Y. Sept. 6, 2012); *LV v. N.Y.C. Dep't of Educ.*, 700 F. Supp. 2d 510, 525-26 (S.D.N.Y. 2010) (vagueness in the entries); *Williams v. N.Y.C. Hous. Auth.*, 975 F. Supp. 317, 328 (S.D.N.Y. 1997) (combined activities).

In short, because there is no "evidence that plaintiffs' block-billing has obscured . . . unreasonable billing, the Court will not impose an across-the-board penalty simply because a law firm has engaged in a generally accepted billing practice." *Hnot*, 2008 WL 1166309, at *6; *see also, e.g.*, *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 09 Civ. 859 (KMK), 2012 WL 4108111, at*15 (S.D.N.Y. Sept. 18, 2012) ("Defendant has identified no entries where the hours billed are unreasonable, or where block billing has combined activities compensable at different rates. Therefore, the Court does not find any reduction warranted.").

**D. Travel Time**

Finally, Defendants object to Farrell's fee request insofar as it seeks compensation for Harter Secrest attorneys' travel time at 100% of their standard rate. In recognition of the fact that travel time "may be beneficial, but . . . probably is not as productive as time at the office or in court," *Wilder v. Bernstein*, 975 F. Supp. 276, 284 (S.D.N.Y. 1997) (internal quotation marks and brackets omitted), courts in the Second Circuit "regularly reduce attorneys' fees by 50 percent for travel time," *LV*, 700 F. Supp. 2d at 526. In this

case, Harter Secrest contends that its clients are generally willing to pay its full rates for travel time because its rates are lower than those charged by most attorneys who practice in this District. (Catillaz Decl. I ¶ 29; Wadsworth Decl. ¶ 7). Nevertheless, because there is no evidence that the attorneys performed legal work during their travels in this case, the Court will reduce the fees requested for travel time by fifty percent. *Cf. Lilly v. Cnty. of Orange*, 910 F. Supp. 945, 951 (S.D.N.Y. 1996) (finding that an attorney demonstrating that he worked while traveling on public transit "might have demonstrated sufficient productivity to warrant his full rate for travel time"). Based on a comparison of the billing records for Wadsworth (who block-billed for travel time and performance of other tasks) and Catillaz (who did not), the Court finds Catillaz billed for five and a half hours of travel time and Wadsworth billed for six hours of travel time, and will reduce the fees requested for that time by fifty percent, or $2,088.75. (*See* Catillaz Decl. I Ex. B, at 37, Entries for Jan. 8 and 10, 2012; Wadsworth Decl. ¶¶ 7-8).

## THE *ADUSUMELLI* PLAINTIFFS' FEE REQUEST

Plaintiffs in the *Adusumelli* and *Akula* cases ("*Adusumelli* Plaintiffs"), seek $304,500.95 in attorney's fees and costs. (Adusumelli Reply Mem. 10 (Docket No. 112)). Defendants challenge this fee request on six grounds: (1) that the billing rate of Krishnan S. Chittur, the *Adusumelli* Plaintiffs' lead counsel, is excessive; (2) that certain fees relating to the preparation of an amicus brief in *Kirk* and time spent speaking with potential clients is nonrecoverable; (3) that a substantial number of time entries are vague and block-billed; (4) that substantial legal research was inappropriately performed by Chittur at the highest billing rate; (5) that Chittur engaged in substantial work of a clerical or nonlegal nature that should be billed at a lower rate; and (6) that costs relating to the

filing of the amicus brief and in a vague entry are nonrecoverable. (Defs.' Mem. Law Opp'n Adusumelli Mot. (Docket No. 105) ("Opp'n to Adusumelli") 5).

The Court will address each of these arguments in turn.

**A. Billing Rate**

First, Defendants contend that Chittur's billing rate of $600 per hour is excessive. (Opp'n to Adusumelli 6-9). This precise issue was recently addressed in *Serin v. N. Leasing Sys., Inc.*, No. 06 Civ. 1625 (JSG), 2011 WL 1467560, at *11 (S.D.N.Y. Apr. 19, 2011), in which the Court held that Chittur's rate was unreasonable when compared to "market rates among similar firms," and reduced his rate to $450 per hour. Although the *Adusumelli* Plaintiffs contend that this holding was "clear error" (Adusumelli Reply Mem. 4), the Second Circuit affirmed the decision late last year, noting that the district judge had reduced Chittur's billing rate "after extensive consideration of existing precedents." *Serin v. N. Leasing Sys., Inc.*, No. 11-1778-CV, 2012 WL 5275359, at *2 (2d Cir. Oct. 26, 2012) (summary order). Substantially for the reasons stated in *Serin*, this Court reaches the same conclusion here. That conclusion is further supported by the fact that Chittur's rates were almost *$200 more per hour* than the highest rates charged by Harter Secrest in the same case. Even allowing Chittur a higher hourly rate to account for the difference between the Rochester and New York City legal markets, that difference is excessive. Accordingly, Chittur's billing rate will be reduced to $450 per hour.

**B. Billing Related to Prospective Clients and the *Kirk* Amicus Brief**

Next, Defendants seek to reduce the *Adusumelli* Plaintiffs' fee request for the time the Chittur firm spent speaking with prospective clients and preparing an amicus brief

that was filed in the *Kirk* litigation. (Opp'n to Adusumelli 11-13). The *Adusumelli* Plaintiffs' have agreed to withdraw their request for the former (Chittur Decl. (Docket No. 113) ("Chittur Decl. II") ¶ 4), so the Court will reduce the fee request for that time. As for the latter, Defendants argue that the *Adusumelli* Plaintiffs are not entitled to recover for their counsels' time spent on preparation of the *Kirk* amicus brief because the *Adusumelli* Plaintiffs were not "prevailing parties" in the *Kirk* litigation and do not otherwise meet the standard for amici seeking fee awards. (Opp'n to Adusumelli 12-13 (citing *Wilder v. Bernstein*, 965 F.2d 1196, 1203 (2d Cir. 1992) (distinguishing between intervenors as prevailing parties and amici)). The question is not whether Plaintiffs were "prevailing parties" in *Kirk*, however, but rather whether Plaintiffs — as prevailing parties in this case — are entitled to recover for their counsel's work on the amicus brief in *Kirk* as a component of their work in *this* case. The Court concludes that they are.

Although it does not appear that the Second Circuit has addressed when a prevailing party can recover fees for the preparation of an amicus brief in related litigation, other courts have spoken to the issue under other fee-shifting statutes. These courts have held that a prevailing party is entitled to recover for "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*, 676 F.2d 1291, 1313 (9th Cir. 1982); *Ariz. v. Maricopa Cnty. Med. Soc'y*, 578 F. Supp. 1262, 1268 (D. Ariz. 1984) (applying this standard to the filing of an amicus brief in related litigation). As the D.C. Circuit has explained, therefore, "[c]ompensable time should not be limited to hours expended within the four corners of the litigation"; instead, time is compensable as long as it was "expended in pursuit of a

13

successful resolution of the case in which fees are being claimed." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1335 (D.C. Cir. 1982); *see also Boehner v. McDermott*, 541 F. Supp. 2d 310, 320 (D.D.C. 2008) (applying the standards from *Twin City Sportservice* and *Concerned Veterans* to a fee request under the federal wiretapping statute for an amicus curiae filing in a related case).

Applying these standards here, Plaintiffs are entitled to reimbursement for the Chittur firm's preparation of an amicus brief in *Kirk*. The parties in these cases stipulated to stay litigation pending the outcome in *Kirk* based on a recognition that the legal issues were nearly identical and that the outcome in *Kirk* would likely be dispositive here. (*See* Docket No. 7; Opp'n to Farrell (acknowledging that *Kirk* "would be dispositive of the issues litigated in these consolidated actions")). In fact, as discussed above, Defendants oppose the Farrell fee request in this case based in part on the similarity between *Kirk* and these cases. (Opp'n to Farrell 6). Given these similarities, the Court has no trouble finding that "a reasonable or prudent lawyer" in the Chittur firm's position would have filed an amicus brief in *Kirk* "to advance or protect his client's interest" and "in pursuit of a successful resolution" of these cases. Accordingly, Defendants' objection is rejected.

## C. Block-Billing, Vague Billing Entries, and Non-Attorney Work

Defendants argue that the *Adusumelli* Plaintiffs' fee request should also be reduced because of block-billing, vague billing entries, and the performance of clerical and other non-legal work by attorneys. (*See* Opp'n to Adusumelli 13-20). The Chittur firm engaged in even less block-billing than Harter Secrest, however, so it follows from the Court's discussion above that a reduction on that basis is unwarranted. Defendants' other arguments have more merit. For Chittur, in particular, there are dozens of billing

14

entries relating to telephone calls or correspondence with clients, the Court, co-counsel, and opposing counsel, that provide no information whatsoever regarding the purpose or topic of the work, making it impossible for the Court to evaluate the reasonableness of the claimed time. (*See, e.g.*, Chittur Decl. (Docket No. 93) ("Chittur Decl. I"), Ex. 2, at 4-6, 8-13). In addition, Chittur and Andrey Strutinskiy, of counsel at the Chittur Firm, unreasonably billed at their full rates for routine tasks, such as applying for pharmacist's licenses for their clients and faxing or e-filing documents. Accordingly, the Court will reduce the *Adusumelli* Plaintiffs' fee request by fifteen percent due to vague billing entries and clerical or paralegal work performed at full attorney rates. *See, e.g.*, *LV*, 700 F. Supp. 2d at 525-26 (vagueness); *Tatum v. City of N.Y.*, No. 06 Civ. 4290 (PGG) (GWG), 2010 WL 334975, at *9 (S.D.N.Y. Jan. 28, 2010) (paralegal and clerical work).

**D. Legal Research Performed by Chittur**

Defendants also contend that the *Adusumelli* Plaintiffs' fee request should be reduced on the ground that Chittur did legal research himself rather than delegating it to "less expensive junior attorneys." (Opp'n to Adusumelli 18-19 (internal quotation marks omitted)). In *Serin*, however, the Court rejected precisely this argument, reasoning as follows:

> It is inevitable in smaller law firms that more experienced attorneys must complete work that would be completed by a junior associate at a larger firm. Indeed, the lean staffing at Chittur & Associates prevented Chittur from delegating all legal research to junior attorneys. Additionally, the greater cost of Chittur performing legal research is somewhat offset by Chittur & Associate's practice of not billing Westlaw or Lexis charges to their client.

2011 WL 1467560, at *11 (citation omitted). The Court finds this reasoning persuasive and therefore declines to reduce the fee request "simply because [Chittur] performed legal research that could have been completed by a junior associate at a larger firm." *Id.*

**E. Costs**

Finally, Defendants dispute Plaintiffs' request to be reimbursed for $438.29 in costs associated with the filing of the amicus brief in *Kirk* and $500 for "miscellaneous" costs. (Opp'n to Adusumelli 20-21). As Plaintiffs are entitled to recover for their counsel's work on the *Kirk* amicus brief, they are plainly entitled to recover for the costs associated with that work. The reimbursement request for "miscellaneous" costs, however, is a different story. That description is plainly too vague for the Court to determine if the costs are associated with "[i]dentifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs," which are "generally taxable under § 1988," or with "nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate." *Kuzma v. I.R.S.*, 821 F.2d 930, 933-34 (2d Cir. 1987). In a footnote to a declaration submitted in reply to Defendants' opposition, Chittur asserts that the "miscellaneous" costs were "cumulative" expenses and "include such expenses as copying, phone bills, conveyance, and similar items routinely billed by law firms to clients." (Chittur Decl. II 3 n.4). This conclusory assertion, however, is both too little (in that it lacks any meaningful detail) and too late (in that it came only in reply). Accordingly, the Court will reduce Plaintiffs' request by $500.

**CONCLUSION**

For the reasons discussed above, Plaintiffs' motions for attorney's fees and costs are GRANTED in part and DENIED in part. The *Adusumelli* Plaintiffs' request for

2011 WL 1467560, at *11 (citation omitted). The Court finds this reasoning persuasive and therefore declines to reduce the fee request "simply because [Chittur] performed legal research that could have been completed by a junior associate at a larger firm." *Id.*

**E. Costs**

Finally, Defendants dispute Plaintiffs' request to be reimbursed for $438.29 in costs associated with the filing of the amicus brief in *Kirk* and $500 for "miscellaneous" costs. (Opp'n to Adusumelli 20-21). As Plaintiffs are entitled to recover for their counsel's work on the *Kirk* amicus brief, they are plainly entitled to recover for the costs associated with that work. The reimbursement request for "miscellaneous" costs, however, is a different story. That description is plainly too vague for the Court to determine if the costs are associated with "[i]dentifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs," which are "generally taxable under § 1988," or with "nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate." *Kuzma v. I.R.S.*, 821 F.2d 930, 933-34 (2d Cir. 1987). In a footnote to a declaration submitted in reply to Defendants' opposition, Chittur asserts that the "miscellaneous" costs were "cumulative" expenses and "include such expenses as copying, phone bills, conveyance, and similar items routinely billed by law firms to clients." (Chittur Decl. II 3 n.4). This conclusory assertion, however, is both too little (in that it lacks any meaningful detail) and too late (in that it came only in reply). Accordingly, the Court will reduce Plaintiffs' request by $500.

**CONCLUSION**

For the reasons discussed above, Plaintiffs' motions for attorney's fees and costs are GRANTED in part and DENIED in part. The *Adusumelli* Plaintiffs' request for

$304,500.95 in fees and costs will be reduced by $65,415 for Chittur's excessive billing rate (436.1 hours claimed multiplied by the $150 per hour reduction), $500 for the disallowed miscellaneous costs, and then by fifteen percent across-the-board for the vague entries and claimed paralegal and clerical work. The *Adusumelli* Plaintiff are therefore awarded $202,798.06 in attorney's fees and costs. Farrell's request for $215,020.34 in attorney's fees and costs will be reduced by $5,062.50 based on Harter Secrest's prior work on the *Kirk* litigation and by $2,088.75 for counsels' travel time. Farrell is therefore awarded $207,869.09 in attorney's fees and costs.

The Clerk of Court is directed to terminate Docket Nos. 87 and 92 and to close these cases.

SO ORDERED.

Dated: March 28, 2013
      New York, New York

_____
JESSE M. FURMAN
United States District Judge